UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| CHRISTOPHER JONES, <br><br> Plaintiff, <br><br> v. <br><br> LYDALL, INC., DAVID G. BILLS, JAMES J. CANNON, MARC T. GILES, PAUL W. GRAVES, SARA A. GREENSTEIN, SUZANNE HAMMETT, and KATHERINE C. HARPER, <br><br> Defendants. | Case No. <br><br> **COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS** <br><br> **JURY TRIAL DEMANDED** |

Plaintiff Christopher Jones ("Plaintiff"), upon information and belief, including an examination and inquiry conducted by and through his counsel, except as to those allegations pertaining to Plaintiff, which are alleged upon personal belief, alleges the following for his Complaint:

**NATURE AND SUMMARY OF THE ACTION**

1. This is an action brought by Plaintiff against Lydall, Inc. ("Lydall" or the "Company") and the members of its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. §

240.14a-9, and to enjoin the vote on a proposed transaction, pursuant to which Lydall will be acquired by Unifrax Holding Co. ("Unifrax") through Unifrax's subsidiary Outback Merger Sub, Inc. ("Merger Sub") (the "Proposed Transaction").

2.      On June 21, 2021, Lydall and Unifrax issued a joint press release announcing that they had entered into an Agreement and Plan of Merger dated June 21, 2021 (the "Merger Agreement") to sell Lydall to Unifrax.  Under the terms of the Merger Agreement, each Lydall stockholder will receive $62.10 in cash for each share of Lydall common stock they own (the "Merger Consideration").  The Proposed Transaction is valued at approximately $1.3 billion.

3.      On August 10, 2021, Lydall filed a Schedule 14A Definitive Proxy Statement (the "Proxy Statement") with the SEC.  The Proxy Statement, which recommends that Lydall stockholders vote in favor of the Proposed Transaction, omits or misrepresents material information concerning, among other things: (i) the Company's financial projections and the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by the Company's financial advisor BofA Securities, Inc. ("BofA"); and (ii) Company insiders' potential conflicts of interest.  Defendants authorized the issuance of the false and misleading Proxy Statement in violation of Sections 14(a) and 20(a) of the Exchange Act.

4. In short, unless remedied, Lydall's public stockholders will be irreparably harmed because the Proxy Statement's material misrepresentations and omissions prevent them from making a sufficiently informed voting or appraisal decision on the Proposed Transaction. Plaintiff seeks to enjoin the stockholder vote on the Proposed Transaction unless and until such Exchange Act violations are cured.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

6. This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Plaintiff's claims arose in this District, where a substantial portion of the actionable conduct took place, where most of the documents are electronically stored, and where the evidence exists. Lydall maintains and operates a Product Manufacturing

facility in this District. Moreover, each of the Individual Defendants, as Company officers or directors, has extensive contacts within this District.

## THE PARTIES

8. Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of Lydall.

9. Defendant Lydall is a Delaware corporation with its principal executive offices located at One Colonial Road, Manchester, Connecticut 06042 and a Product Manufacturing facility located in Novi, Michigan. Lydall produces value-added engineered materials and specialty filtration solutions. Lydall's common stock trades on the New York Stock Exchange under the ticker symbol "LDL."

10. Defendant David G. Bills ("Bills") has been a director of the Company since 2018.

11. Defendant James J. Cannon ("Cannon") has been a director of the Company since 2017.

12. Defendant Marc T. Giles ("Giles") has been Chairman of the Board since 2017 and a director of the Company since 2008.

13. Defendant Paul W. Graves ("Graves") has been a director of the Company since April 2021.

14. Defendant Sara A. Greenstein ("Greenstein") has been President and Chief Executive Officer ("CEO") of the Company since November 2019, and a director of the Company since 2019.

15. Defendant Suzanne Hammett ("Hammett") has been a director of the Company since 2000.

16. Defendant Katherine C. Harper ("Harper") has been a director of the Company since April 2021.

17. Defendants identified in paragraphs 10-16 are referred to herein as the "Board" or the "Individual Defendants."

## OTHER RELEVANT ENTITIES

18. Unifrax is a leading global supplier of high-performance specialty materials used in thermal management, specialty filtration, battery materials, emission control and fire protection applications. Unifrax is headquartered in Tonawanda, New York and is backed by Clearlake Capital Group, L.P. ("Clearlake"). Unifrax serves more than 4,000 customers through a global footprint of 31 plants operating across 12 countries. Unifrax's portfolio of products, technologies, proprietary chemistries and processes have been developed from more than 70 years of deep application knowledge and innovation. Its products address mission critical energy efficiency, emission control, regulatory and fire safety requirements across the globe.

19. Clearlake is an investment firm founded in 2006 that operates integrated businesses across private equity, credit and other related strategies. Clearlake currently has approximately $39 billion of assets under management and its senior investment principals have led or co-led over 300 investments. The firm has offices in Santa Monica, California and Dallas, Texas.

20. Merger Sub is a Delaware corporation and a direct, wholly owned subsidiary of Unifrax.

**SUBSTANTIVE ALLEGATIONS**

**<u>Background of the Company</u>**

21. Lydall and its subsidiaries design, manufacture, and market specialty filtration and advanced materials solutions. Lydall operates in a variety of attractive end markets supported by global megatrends such as the demand for indoor air quality and lower emissions, near sourcing of supply chains, and vehicle electrification redefining safety and sound. Lydall's applications include, high performance air and liquid specialty filtration, molecular filtration, engineered fiber based materials and sealing solutions, specialty insulation including high temperature and ultra-low temperature (cryogenic) insulation, needle punch nonwoven materials for industrial, geosynthetic, medical and other specialty applications. Lydall also offers thermal management and acoustical products and solutions to assist in the reduction of noise, vibration, and harshness.

22. The Company is organized into three reportable segments: Performance Materials, Technical Nonwovens, and Thermal Acoustical Solutions. The Performance Materials and Technical Nonwovens segments' products are generally sold to original equipment manufacturers ("OEMs"), Tier 1, Tier 2, and Tier 3 industrial customers while the Thermal Acoustical Solutions segment's products are sold to OEMs and Tier 1 suppliers in the automotive industry.

23. On July 28, 2021, Lydall announced its second quarter 2021 financial results, including quarterly net sales of $221.7 million, an increase of $75.6 million, or 51.7%, from the second quarter of 2020.  Operating income was $9.4 million, an $11.2 million improvement from the second quarter 2020 operating loss of $1.7 million.  Consolidated adjusted EBITDA was $24.7 million, an increase of $13.3 million, or 116.4%, from the second quarter of 2020, with an adjusted EBITDA margin of 11.1%, expanding 330 basis points from the prior year.  Reflecting on the quarter, defendant Greenstein stated:

> Over the past year, Lydall has gone through an incredible transformation proving our flexibility and responsiveness in the face of the COVID pandemic.  The Lydall team continued to deliver strong results in the second quarter, executing on our strategic roadmap and leveraging our focused portfolio to take advantage of a period of broader economic confidence.
>
> Our Performance Materials ("PM") business saw continued strong demand in specialty filtration led by higher sales of fine fiber meltblown media as well as sealing solutions which benefited from favorable trends in transportation, agricultural, and construction end markets.  The PM team commissioned additional fine fiber meltblown

capacity at our Rochester, New Hampshire and St. Rivalain, France facilities, ahead of schedule and under budget.

**The Proposed Transaction**

24.     On June 21, 2021, Lydall and Unifrax issued a joint press release announcing the Proposed Transaction.  The press release states, in relevant part:

> TONAWANDA, N.Y. and MANCHESTER, Conn., June 21, 2021  -- Unifrax, a leading global provider of high-performance specialty materials focused on thermal management, specialty filtration, battery materials, emission control and fire protection applications backed by Clearlake Capital Group, L.P. ("Clearlake"), today announced it has signed definitive agreements to acquire Lydall, Inc. (NYSE: LDL, "Lydall" or the "Company"), a leader in the design and production of specialty filtration materials and advanced material solutions.  With its leading technologies and 23 manufacturing facilities around the world, Lydall is well positioned to capitalize on growth in clean air filtration and electric vehicle adoption, among many other attractive markets. Under the terms of the agreement, Lydall shareholders will receive $62.10 per share in cash for each share outstanding, implying a total enterprise value of approximately $1.3 billion.
>
> "The combination of Unifrax and Lydall creates a global specialty materials platform with new cutting edge technologies in advanced filtration, electric vehicle battery systems, and energy saving applications," said John Dandolph, President and CEO of Unifrax. "The addition of Lydall's people, technologies, and assets to the Unifrax portfolio will help accelerate our innovation pipeline and creates a world class platform capable of solving the world's most pressing energy consumption, environmental and filtration challenges. We are excited to partner with a company that is similarly focused on our commitment to a Greener, Cleaner, and Safer® world."
>
> Sara Greenstein, President and CEO of Lydall, added, "We are excited about the combination of Lydall and Unifrax.  With this transaction, we are creating a leader in specialty filtration and advanced materials with over 250 years of combined expertise and experience delivering innovative and compelling solutions to customers worldwide."

"We have long admired Lydall and what it would bring to our platform investment in Unifrax, and could not be more excited about partnering with the Company and its team to build one of the world's leading global specialty materials platforms," said José E. Feliciano, Co-Founder and Managing Partner at Clearlake, and Colin Leonard, Partner at Clearlake, in a joint statement.  "We have supported Unifrax's development of new technologies over the last few years that have the potential to change how we think about the industries in which both Unifrax and Lydall operate and inform their futures.  The addition of Lydall to the Unifrax portfolio and its strong capabilities in advanced filtration creates a global platform with significant scale that together can accelerate each company's respective compelling growth plans."

BofA & Co. LLC acted as lead financial advisor, J.P. Morgan acted as financial advisor, and Kirkland & Ellis acted as legal counsel to Unifrax in the transaction.  BofA Securities is acting as exclusive financial advisor, and Davis Polk & Wardwell LLP is acting as legal counsel to Lydall in connection with the transaction.

**Insiders' Interests in the Proposed Transaction**

25.     Lydall insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders.  The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff and the public stockholders of Lydall.

26.     Notably, Company insiders stand to receive substantial financial benefits for securing the deal with Unifrax.  Pursuant to the Merger Agreement, all outstanding Company restricted stock awards and stock options will be converted into cash payments.

27. Further, if they are terminated in connection with the Proposed Transaction, Lydall insiders stand to receive substantial cash severance payments in the form of golden parachute compensation. The cash severance payments that would be distributed to Lydall's three executive officers who are not named executive officers under their employment agreements upon a qualifying termination of employment are as follows: Robert Junker: $1,269,633; John J. Tedone: $872,252 and Anthony Justice: $848,061. Moreover, the amounts that Lydall's named executive officers would receive if they are terminated in connection with the merger are set forth in the following table:

| | Cash ($)(1) | Equity ($)(2) | Perquisites/ Benefits ($)(3) | Total ($) |
|---|---|---|---|---|
| Sara A. Greenstein, President and Chief Executive Officer | $3,698,356 | $15,508,157 | $169,106 | $19,375,619 |
| Randall B. Gonzales, Chief Financial Officer and Treasurer | $1,357,717 | $ 5,425,795 | $110,138 | $ 6,893,650 |
| Chad A. McDaniel, General Counsel and Chief Administrative Officer | $1,410,441 | $ 5,286,004 | $ 87,798 | $ 6,784,243 |
| Ashish P. Diwanji, Division – Vice President, Lydall Performance Materials | $1,285,013 | $5,136,255 | $103,568 | $6,524,836 |
| David D. Glenn, Division President, Lydall Thermal Acoustical Solutions | $ 963,094 | $2,351,500 | $ 83,658 | $3,398,252 |

**<u>The Proxy Statement Contains Material Misstatements or Omissions</u>**

28. The defendants filed a materially incomplete and misleading Proxy Statement with the SEC and disseminated it to Lydall's stockholders. The Proxy Statement misrepresents or omits material information that is necessary for the

Company's stockholders to make an informed decision whether to vote in favor of the Proposed Transaction or seek appraisal.

29. Specifically, as set forth below, the Proxy Statement fails to provide Company stockholders with material information or provides them with materially misleading information concerning: (i) the Company's financial projections and the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by BofA; and (ii) Company insiders' potential conflicts of interest.

***Material Omissions Concerning the Company's Financial Projections and BofA's Financial Analyses***

30. The Proxy Statement omits material information regarding the Company's financial projections.

31. With respect to each of the "Strategic Plan Case" and "Aspirational Case," the Proxy Statement fails to disclose all line items underlying the calculation of (i) Adjusted EBITDA; and (ii) with respect to the "Strategic Plan Case," unlevered free cash flow.

32. Additionally, the Proxy Statement fails to disclose Lydall management's assumptions underlying the "Aspirational Case" projections.

33. The Proxy Statement also fails to disclose material information concerning BofA's financial analyses.

34. The Proxy Statement describes BofA's fairness opinion and the various valuation analyses performed in support of its opinion. However, the description of

BofA's fairness opinion and analyses fails to include key inputs and assumptions underlying these analyses. Without this information, as described below, Lydall's public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on BofA's fairness opinion in determining whether to vote in favor of the Proposed Transaction or seek appraisal.

35. With respect to BofA's *Selected Public Companies Analysis*, the Proxy Statement fails to disclose the individual multiples and financial metrics for each of the companies analyzed.

36. With respect to BofA's *Selected Precedent Transactions Analysis*, the Proxy Statement fails to disclose: (i) the individual multiples and financial metrics for each of the transactions analyzed; and (ii) Lydall's LTM estimated Adjusted EBITDA.

37. With respect to BofA's *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) Lydall's fiscal year 2025 estimated EBITDA;[1] (ii) quantification of the terminal values of the Company; and (iii) quantification of the inputs and assumptions underlying the discount rates ranging from 9.0% to 12.0%.

---

[1] The projections set forth on page 49 of the Proxy Statement disclose 2025 *Adjusted* EBITDA. The Proxy Statement must quantify Lydall's 2025 estimated EBITDA or clarify whether BofA used Lydall's 2025 Adjusted EBITDA to calculate the terminal value for the Company.

38. With respect to BofA's analysis of stock price targets for Lydall, the Proxy Statement fails to disclose the individual price targets observed and the sources thereof.

39. The omission of this information renders the statements in the "Projected Financial Information" and "Opinion of Lydall's Financial Advisor" sections of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

*Material Omissions Concerning Company Insiders' Potential Conflicts of Interest*

40. The Proxy Statement omits material information regarding potential conflicts of interest faced by Company insiders.

41. For example, in the June 21, 2021 press release announcing the Proposed Transaction, Unifrax President and CEO John Dandolph states, "***The addition of Lydall's people***, technologies, and assets to the Unifrax portfolio will help accelerate our innovation pipeline and creates a world class platform capable of solving the world's most pressing energy consumption, environmental and filtration challenges." Emphasis added. Similarly, representatives of Clearlake were quoted as stating, "We have long admired Lydall and what it would bring to our platform investment in Unifrax, and *could not be more excited about partnering with the Company **and its team*** to build one of the world's leading global specialty materials platforms." Emphasis added. The Proxy Statement, however, fails to

disclose whether any of Lydall's executive officers are continuing their employment following consummation of the Proposed Transaction, as well as the details of all employment and retention-related discussions and negotiations that occurred between Unifrax, Clearlake and Lydall's executive officers, including who participated in all such communications, when they occurred and their content. The Proxy Statement further fails to disclose whether any of Unifrax's proposals or indications of interest mentioned management retention in the combined company following the Proposed Transaction.

42. Communications regarding post-transaction employment and merger-related benefits during the negotiation of the underlying transaction must be disclosed to shareholders. This information is necessary for shareholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

43. The omission of this information renders the statements in the "Background of the Merger" and "Interests of Lydall's Directors and Executive Officers in the Merger" sections of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

44. The Individual Defendants were aware of their duty to disclose the above-referenced omitted information and acted negligently (if not deliberately) in

failing to include this information in the Proxy Statement. Absent disclosure of the foregoing material information prior to the stockholder vote on the Proposed Transaction, Plaintiff and the other Lydall stockholders will be unable to make an informed voting decision on the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

**CLAIMS FOR RELIEF**

**COUNT I**

**Claims Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder**

45.     Plaintiff repeats all previous allegations as if set forth in full.

46.     During the relevant period, defendants disseminated the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary to make the statements, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

47.     By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Proxy Statement. The Proxy Statement was prepared, reviewed, and/or disseminated by the defendants. It misrepresented and/or omitted material facts, including material information about the Company's financial projections, BofA's financial analyses and Company insiders' potential conflicts of interest. The defendants were at least

negligent in filing the Proxy Statement with these materially false and misleading statements.

48.     The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction.

49.     By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

50.     Because of the false and misleading statements in the Proxy Statement, Plaintiff is threatened with irreparable harm, rendering money damages inadequate. Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

### Claims Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act

51.     Plaintiff repeats all previous allegations as if set forth in full.

52.     The Individual Defendants acted as controlling persons of Lydall within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Lydall, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the

decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

53. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

54. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of the Proxy Statement.

55. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction. The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions the Company directors had input into.

56.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

57.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, promulgated thereunder, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of defendants' conduct, Lydall's stockholders will be irreparably harmed.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of Lydall, and against defendants, as follows:

A.   Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and disseminate the material information identified above to Lydall stockholders;

B.   In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C. Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as SEC Rule 14a-9 promulgated thereunder;

D. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated:  August 24, 2021                                  **WEISSLAW LLP**

By  /s/ Richard A. Acocelli
Richard A. Acocelli
1500 Broadway, 16th Floor
New York, New York 10036
Tel: (212) 682-3025
Fax: (212) 682-3010
Email: racocelli@weisslawllp.com

*Attorneys for Plaintiff*